Luxor Capital Group LP v Altisource Asset Mgt. Corp. (2023 NY Slip Op 03196)

Luxor Capital Group LP v Altisource Asset Mgt. Corp.

2023 NY Slip Op 03196

Decided on June 13, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 13, 2023

Before: Oing, J.P., Singh, Moulton, Scarpulla, Shulman, JJ. 

Index No. 650746/20 Appeal No. 445 Case No. 2022-05775 

[*1]Luxor Capital Group LP et al., Plaintiffs-Respondents-Appellants,
v
Altisource Asset Management Corporation, Defendant-Appellant-Respondent.

Orrick, Herrington & Sutcliffe LLP, New York (Darrell S. Cafasso of counsel), for appellant-respondent.
Akin Gump Strauss Hauer & Feld LLP, New York (Douglas A. Rappaport of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about December 1, 2022, which, insofar as appealed from, denied plaintiffs' and defendant's summary judgment motions, unanimously modified, on the law, to grant defendant's motion, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint.
This action arises out of a transaction in which plaintiffs invested in defendant, an asset management company, by purchasing 250,000 shares of certain preferred stock (Shares). The certificate of designations — the document that established the rights of holders of Shares— was drafted by plaintiffs. Section 5 of the certificate established plaintiffs' right to redeem their Shares. Section 5(b) gave plaintiffs an option to seek redemption of all their Shares on specified Redemption Dates, the first of which was March 15, 2020. The last sentence of section 5(b) stated that upon receiving a timely redemption notice from the holders of Shares, defendant "shall redeem for cash on [a certain date within 45 business days of receipt], out of funds legally available therefor, all, but not less than all, of the outstanding . . . Shares held by [the] holder at an amount equal to the Redemption Price" set forth in the certificate. Section 5(b) thus permits redemption of all or none of a holder's Shares on a given Redemption Date. Plaintiffs do not contend otherwise. In fact, the record shows that plaintiffs themselves drafted the "all, but not less than all" language.
Neither party disputes that in January and February 2020, the preferred shareholders submitted redemption notices for all of their outstanding Shares, which were worth approximately $250 million. However, defendant informed the holders that it did not have $250 million in legally available funds as of March 15, 2020, and therefore it would not redeem the Shares on that date.
Defendant established its entitlement to summary judgment dismissing the complaint. In opposition, plaintiffs failed to raise a triable issue of fact, and also failed to establish their entitlement to summary judgment on their own motion. Section 5(b), the operative portion of the certificate of designations, is unambiguous: defendant is not obliged to redeem any Shares if, within 45 business days of receiving timely redemption notices from preferred shareholders, it lacks legally available funds to redeem all the Shares for which it received such notices.
Plaintiffs argue that, if funds for the value of all redeemed Shares are not legally available as of the specified date, they are entitled to partial payment out of available surplus and to full payment out of surplus as it becomes available. This argument cannot be reconciled with the all-or-nothing nature of the parties' agreement. The certificate of designation explicitly states that all Shares must be redeemed "for cash," on a specific date, for a specific price, out of legally available funds (compare [*2]QC Holdings, Inc. v Allconnect, Inc., 2018 WL 4091721, * 7, 2018 Del Ch LEXIS 299, *18-19 [Del Ch, Aug. 28, 2018, C.A. No. 2017-0715-JTL] ["The language . . . is silent as to either an abrupt termination or a continuing obligation. The phrases 'to the extent that' and 'for so long as' both imply a continuing obligation"]). If the parties had intended to provide for partial or delayed payment, they would have done so (compare SV Inv. Partners, LLC v ThoughtWorks, Inc., 7 A3d 973, 978-979 [Del Ch 2010] [contract requiring immediate pro rata payment and imposing continuous obligation to discharge remainder], affd 37 A3d 205 [Del 2011]; Frederick Hsu Living Trust v ODN Holding Corp., 2017 WL 1437308, *3-4, 2017 Del Ch LEXIS 67, *9-11 [Del Ch, Apr 14, 2017, C.A. No. 12108-VCL] [same]). We will not read such a provision into this agreement between sophisticated business entities (see Indeck Energy Servs., Inc. v Merced Capital, L.P., 200 AD3d 455, 456 [1st Dept 2021]).
Plaintiffs further contend that "out of legally available funds" is a promise, rather than a condition, and that the remedy for breaching this promise is damages equal to the unpaid amount. Yet, as plaintiffs concede, Business Corporation Law § 513 (a) would prohibit payment to plaintiffs except out of surplus. To issue a judgment against defendant would enable plaintiffs "to obtain through litigation a result that [they were] unable to achieve" — and, legally, could not have achieved — "during negotiations" (Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 60 AD3d 61, 69 [1st Dept 2008], affd 13 NY3d 398 [2009]). It would also undermine the purpose of Section 513 by effectively converting shareholders to creditors (see In re Poseidon Pool & Spa Recreational, Inc.,391 BR 234,241 [Bankr ED NY 2008]["The rationale for this statute is that the equities favor general unsecured creditors over shareholders or former shareholders"]; see also SV Inv. Partners, 7 A3d at 982 [restrictions in equivalent Delaware statute "are intended to protect creditors . . . by prohibiting transactions that would redistribute to stockholders assets . . . upon which creditors were presumed to rely when extending credit"]).[FN1] Plaintiffs attempt to circumvent this restriction by limiting payments to surplus but, as we state above, this interpretation would effectively add terms to the contract. Therefore, "out of legally available funds" must be read as a condition rather than a promise (see Brevan Howard Credit Catalyst Master Fund Ltd. v Spanish Broadcasting Sys., Inc., 2014 WL 2943570, *5, 2014 Del Ch LEXIS 109, *15-18 [Del Ch, June 27, 2014, C.A. No. 9209—VCG]; see also Starr Indem. & Liab. Co. v. Brightstar Corp., 388 F Supp 3d 304, 326-327 [SD NY 2019], affd 828 Fed Appx 84 [2d Cir 2020]).
The remaining terms of the certificate also support our straightforward interpretation of the redemption clause. First, Section 5(d), states that defendant "defaults in the payment in full" only "[i]n the case of [*3]any redemption pursuant to this Section 5." Where there is no redemption, because sufficient funds are not legally available, there is no duty to pay and consequently no default (see TCV VI, L.P. v TradingScreen Inc., 2015 WL 1598045, *8, 2015 Del Ch LEXIS 108, *24-25 [Del Ch, Feb. 26, 2015, C.A. No. 10164-VCN], affd sub nom. Continental Invs. Fund LLC v TradingScreen Inc., 273 A3d 754 [Del 2022]). Similarly, section 13 precludes the parties from asserting rights other than those in the certificate of designation.
Plaintiffs argue that our holding would permit defendant to defraud creditors by intentionally rendering funds legally unavailable. If such circumstances existed, plaintiffs would have readily available remedies (see Rehberger v MRW Group, Inc., 2008 WL 919665, 2008 US Dist LEXIS 27045 [ED NY, Mar. 31, 2008, No. 05-CV-0210 (JS)(MLO)] [ordering defendant to perform under stock redemption agreement because plaintiff established that defendant had surplus and would not be rendered insolvent]; Brevan Howard, 2014 WL 2943570, *6-7, 2014 Del Ch LEXIS 109, *19-26 [considering allegations of insufficient effort to obtain legally available funds and finding them to state a claim for breach of contract]; see also Nakano v Nakano Mcglone Nightingale Adv., 84 Misc 2d 905, 910 [Sup Ct, New York County 1975] [reducing damages because defendant established absence of surplus]; SV Inv. Partners, 7 A3d at 988-990 [finding insufficient evidence that defendants acted in bad faith by determining insufficient funds were legally available]). Here, however, plaintiffs have not presented any evidence of bad faith or fraudulent actions.
Reading the agreement as a whole, and considering the appropriate facts and circumstances, we find the agreement to be unambiguous (see Riverside S. Planning Corp., 60 AD3d at 66-67). Thus, we may not consider the extrinsic evidence proffered by plaintiffs (see id. at 66).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 13, 2023

Footnotes

Footnote 1: There is evidence in the record that plaintiffs were motivated by a similar concern in drafting the language at issue, namely, that another holder of Shares might get redeemed in front of them.